# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ali Hamad Al Bazergan,<br>　　　　Petitioner,<br>v.<br>Donald J Trump, et al.,<br>　　　　Respondents. | No. CV-25-03171-PHX-JJT (JFM)<br>**ORDER** |

At issue is Petitioner Al Bazergan's Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. 2, Mot.). The Motion is fully briefed and was argued before this Court at a hearing held on September 12, 2025.[1] The Court will grant in part and deny in part Petitioner's Motion for Preliminary Injunction as set forth below.

## I.　BACKGROUND

The following facts are undisputed. Petitioner is an Iraqi citizen who arrived in the United States in 1990 as a visitor with a B-2 visa. (Mot. at 7; Resp. at 2; Sep. 12, 2025 Hr'g Tr. at 22–23.) A removal order was entered against Petitioner on April 17, 2013 and he was later detained by immigration authorities on January 12, 2016. (Mot. at 7; Resp. at 3.) In October 2017, Petitioner's removal was ultimately deferred under the Convention Against Torture ("CAT"). (*Id.*) Petitioner was subsequently released from detention in

---

[1] At the hearing, the parties each affirmed that they intended to present no additional evidence regarding the preliminary injunction and were ready to proceed accordingly, so the Court consolidated its consideration of the TRO and Preliminary Injunction applications into a single proceeding. (Sep. 12, 2025 Hr'g Tr. at 2-3.)

February 2018. (*Id*.) DHS then issued an Order of Supervision that set forth conditions of Petitioner's release. Petitioner asserts—and Respondents do not dispute—that he has not violated any terms of his Order of Supervision. (Mot. at 7; Resp. at 4.)

On July 23, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") agents. (Mot. at 8; Resp. at 4.) The same day, Petitioner was provided a Notice of Revocation of Release that explained the revocation decision was "based on a review of your file and/or your personal interview on account of changed circumstances in your case . . . [and] there is a significant likelihood of removal in the reasonably foreseeable future in your case." (Resp. at 4; Doc. 10-2.) On August 1, 2025, Petitioner was provided an informal interview wherein he had an opportunity to respond to the reasons for his revocation of release stated in the Notice. (Resp. at 4; Reply at 10; Doc. 10-3.) On August 7, 2025, ICE requested permission to remove Petitioner to Egypt, Jordan, or Turkiye. (Resp. at 4.) To date, no third country has responded to ICE's removal request. (Resp. at 4-5; Sep. 12, 2025 Hr'g Tr. at 34.) Petitioner remains in custody at the Eloy Detention Center. (Mot. at 12; Resp. at 4.)

Neither party disputes that there is an active, valid removal order permitting Petitioner's removal to any country other than Iraq (Sep. 12, 2025 Hr'g Tr. at 22-23), or that DHS has the authority or discretion to execute Petitioner's removal (Resp. at 7-8; Reply at 3-4). But the parties fervently dispute whether Plaintiff is entitled to immediate release from detention under the Fifth Amendment.[2] They also dispute whether, if he is released, he may be re-detained absent certain due process, and in any event, whether he may be removed to a country other than Iraq without certain due process.

## II.   LEGAL STANDARD

A petitioner seeking a preliminary injunction must show: 1) that he is likely to succeed on the merits of his claim; 2) that he is likely to suffer irreparable harm absent the

---

[2] Petitioner also challenges his current detention on the bases that 1) in re-detaining him, Respondents failed to abide by Title 8, Part 241 of the Code of Federal Regulations and 2) he was not provided a hearing prior to the revocation of his release. Because the Court will order Petitioner's release on other grounds, it need not address these claims.

preliminary injunctive relief; 3) that the balance of equities tips in his favor; and 4) that the relief he seeks is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). While a movant must make a showing on each element of the *Winter* test, the formulation of that test may be slightly altered where the balance of hardships tips sharply towards him. In that circumstance, a movant need only show serious questions going to the merits rather than likelihood of success on those merits. *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (internal quotations and citations omitted). Nonetheless, the movant bears the burden of persuasion and still must make a clear showing of entitlement to relief. *Winter*, 555 U.S. at 22. To that end, the Court remains mindful that temporary injunctive relief is "an extraordinary remedy" to be granted only when the above standards are all met. *Id.*

The Ninth Circuit distinguishes between prohibitory and mandatory injunctions. A prohibitory injunction is said to maintain the *status quo* to prevent a further constitutional violation, while a mandatory injunction requires a respondent to "take action." *Marlyn Nutraceuticals, Inc., v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 879 (9th Cir. 2009). Where a mandatory injunction "goes well beyond simply maintaining the status quo," *id.*, it is particularly disfavored and thus should not issue unless there exists a risk of "extreme or very serious damage." *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017.)

### III.  ANALYSIS

Petitioner seeks more than one form of injunctive relief in his motion, and some of those forms are tied to different claims in his Petition. Thus the Court must evaluate Petitioner's requests for injunctive relief separately to determine whether each satisfies the *Winter* factors.

**A. Release Pending DHS's Third Country Removal Efforts**

The Court will address Petitioner's first two requests for temporary injunctive relief together as the two forms of relief requested implicate the same claims in his Petition. Petitioner asks the Court to: 1) enjoin Respondents from continuing to detain him based on

their plan to remove him to a third country; and 2) to order his immediate release from immigration detention. (Doc. 2 at 2.) He argues this detention is unconstitutional because it is indefinite and violates his right to due process, because it does not comport with applicable regulations, and because he was entitled to, but did not, receive a hearing before being detained. (Doc. 2 at 5.)

### 1. Likelihood of Success on the Merits

The Fifth Amendment's Due Process clause provides in relevant part that the government shall not deprive any person of his liberty without due process of law. The Supreme Court has held that the Due Process Clause protects even an alien subject to a final order of deportation. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). *See also Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (holding the Due Process Clause applies to deportation proceedings).

In *Zadvydas*, the Supreme Court addressed the question of "whether aliens that the government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." 533 U.S. at 695. In answering that question, the Supreme Court recognized that despite the "serious constitutional problem" that a statute authorizing such indefinite detention for an alien subject to a removal order would present, Congress still could impose such a requirement, if it "made its intent [to do so] in the statute clear." *Id*. at 686 (internal citations and quotations omitted). But upon review, the Court in *Zadvydas* held it could find nothing in the Immigration and Nationality Act of 1952 ("INA") or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") "that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention" of aliens subject to final orders of removal. 533 U.S. at 699. For those reasons, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*.

*Zadvydas* held that the "presumptively reasonable" period for detention following a removal order is six months. *Id*. at 701. It also placed the burden on the alien to "provide good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future." *Id*. If a movant can make this showing, "the government must respond with evidence to rebut" it. *Id*. *Zadvydas* thus provides that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. And "for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

In the present case, Petitioner's current order of removal was entered April 17, 2013, and he was detained pursuant to that order on January 12, 2016. His post-removal order detention continued until February 5, 2018, when he was released with conditions pursuant to a grant of deferral of removal under Article III of the United Nations Convention Against Torture ("CAT"). By that time Petitioner had been detained for just less than two years and one month. Since his renewed detention on July 23, 2025, Petitioner has been in ICE custody for an additional eight weeks as of the date of this Order.

Respondents confirmed at the hearing in this matter they do not argue that the clock has been restarted for purposes of determining the presumptively reasonable detention period under *Zadvydas*'s due process analysis. They also do not assert that the now approximately twenty-seven-month post removal order detention period is presumptively reasonable within the framework of *Zadvydas*. Rather, Respondents urge Petitioner's re-detention is still reasonable because there is a significant likelihood ICE will be able to effect Petitioner's removal in the reasonably foreseeable future, and Petitioner has not shown otherwise.

Respondents note that Petitioner was granted a deferral of removal to Iraq, his home country, under the CAT, and no party disputes that order remains in effect. Respondents assert they are not attempting to remove Petitioner to Iraq; rather, they are pursuing removal to one of three third countries—Turkiye, Jordan or Egypt—having sent forms I-241 to each of those countries on August 7, 2025, to inquire whether any would accept Petitioner. Respondents urge that ICE's affirmative efforts to seek a third country to which it may remove Petitioner represents a changed condition. While ICE had not received

responses from any of the three countries as of the September 12 hearing in this matter, Respondents argue that the approximately six weeks since ICE sent its inquiries is too short a time for the Court to conclude there is no significant likelihood of removal in the reasonably foreseeable future and thus Petitioner has not met his burden.

The Court concludes, after considering all of the information presented, that Petitioner is likely to succeed on his Fifth Amendment Due Process claim under *Zadvydas*. In this case, he has been in post-removal order detention a combined total of nearly two years and three months—far in excess of the presumptively reasonable six-month period to the point that "what counts as the reasonably foreseeable future" has shrunken. The Court does not discount the fair possibility that Turkiye, Jordan, Egypt, or failing those options some other third country, may well indicate it would accept Petitioner for removal at some point in the future. But Petitioner's initial burden under *Zadvydas* is not to eliminate all possibility of removal; it is to show that removal is not significantly likely in the reasonably foreseeable future—a timespan that has been "shrunken" by the length of time Petitioner has already spent in post-removal order intermittent detention. And Petitioner has shown that at this point, all ICE has done is to submit inquiries to the three countries—something the agency could have done at any time in the last seven months, or seven years, but that it elected not to do until just over a month ago. The fact that none of the contacted countries has yet to respond is in large part due to ICE's delay in initiating the I-241 inquiries; Respondents cannot shift the countries' purportedly short time to respond, which they have brought about, onto Petitioner's burden.

In light of the above, the Court finds Petitioner has met his burden to show, after a combined detention period of approximately 27 months, that there currently is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. The Court also finds at this juncture that when the burden shifts, Respondents have not introduced evidence to refute that assertion.[3]

---

[3] Respondents also argue that the circumstances of Petitioner's case have changed due to a "recent Supreme Court decision regarding Deferral of Removal under CAT and removals to third countries." (Resp. at 4.) That decision, as Respondents later clarified at oral argument, was *Department of Homeland Security v. D.V.D.*, in which the Supreme

**2. Irreparable Injury**

A movant for preliminary injunctive relief must show that irreparable injury is likely in the absence of that relief. *Winter*, 555 U.S. at 22. The irreparable harm must be shown to be more than speculative or a mere possibility. *E.g., Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). Petitioner has made this showing.

The Ninth Circuit has held that a movant establishes a likelihood of irreparable harm "by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). In addition to an unjustified loss of liberty and disruption of family life evident in any detention found to be unconstitutional, Petitioner here shows a likelihood of significant negative health consequences during his current detention, including failure to address his uncontrolled diabetes or chronic pain and a failure to receive his prescribed medications

---

Court stayed a preliminary injunction issued by a Massachusetts district court that had prohibited DHS from "removing the plaintiffs and putative class members to a third country without 'written notice of the third country' and 'a meaningful opportunity . . . to submit an application' for relief under the [CAT]." 145 S. Ct. 2153, 2155 (Sotomayor, J., Kagan, J., and Jackson, J., dissenting); (Sep. 12, 2025 Hr'g Tr. at 27–29). Respondents maintain that Petitioner's removal is significantly likely to occur in the foreseeable future as a result of this decision. The Court is not persuaded.

It is unclear how the Supreme Court's emergency stay order in *D.V.D.* would demonstrate any more likelihood that Petitioner's removal would occur in the reasonably foreseeable future. The Court certainly can understand Respondents' assertion that the ruling affected both their nationwide legal strategy and management decision to begin pursuing third-country removals of removable aliens with CAT deferrals, including Petitioner. But it fails to see how those decisions by Respondents impact the above analysis, which observes simply that some remaining contingent events to Petitioner's removal are in the hands of foreign governments, beyond the control of ICE, and not susceptible to putting a clock on them without more concrete facts. This would be true however the Supreme Court ruled in *D.V.D.*

Finally, to the extent Respondents argue that Petitioner's status as a member of the "non-opt-out" certified class of Plaintiffs in *D.V.D.* precludes his bringing the instant habeas, the Court rejects that reasoning insofar as it would preclude his claims pertaining to re-detention. Where a class member in one matter independently brings another matter individually that would overlap the class action subject matter in part but not entirely, the Ninth Circuit has held that a district court may not dismiss those allegations in the individual complaint that go beyond the allegations and the relief prayed for in the class action. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). Here, Petitioner's claims arguing the unconstitutionality and other illegality of his detention pending removal appear to go beyond the allegations of the class in *D.V.D.* and the relief it seeks. Petitioner's membership in the *D.V.D.* class will not bar his detention-related claims.

regularly. (Doc. 2 at 33.) Under these circumstances, the Court finds Petitioner will suffer irreparable harm until he is released.

### 3. Equities and Public Interest

When the government is party to a matter, the final two *Winter* factors—the balance of the equities and the public interest involved—merge. *Padilla v. Immigr. & Customs Enforcement*, 953 F.3d 1143, 1141 (9th Cir. 2020). The Court finds that these factors fall in Petitioner's favor. The Supreme Court has recognized a public interest in preventing aliens from being wrongfully removed. *Nken v. Holder*, 556 U.S. 418, 436 (2009).[4] Moreover, where a movant has shown a likelihood of succeeding on the merits of a claim grounded in a constitutional violation, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citations and quotations omitted). Finally, the inequity—or hardship—to Respondents in having Petitioner released while they seek to find a lawful third country that will accept Petitioner is minimal under the circumstances of this case, as is the public interest in safety issues or risk of flight. This is because Petitioner has shown, and Respondents do not dispute, that since he was released from ICE custody in February 2018 on conditional parole, he has been in full compliance with his initial reporting requirements and other terms, and then his October 2018 I-220B Order of Supervision terms, until his re-detention this past July. During this approximately seven and one-half year period, Petitioner appeared at ICE Enforcement and Removal Operations offices each time he was required to do so. No party has introduced evidence that Petitioner engaged in any criminal conduct in this period. These facts, along with Petitioner's advancing age of 65 and his current health issues as set forth above, undermine any contention that he presents a danger to the community while released. They, along with the fact that Petitioner's wife is a United States citizen and that he has no status in any other country except Iraq, likewise do not

---

[4] The Court recognizes that here in Subsection III.A of this Order it analyzes the propriety of detention pending removal rather than removal itself. The holding in *Nken* nonetheless informs the question before this Court, as the detention at issue is necessarily in service of the contemplated removal action.

1 support a conclusion that Petitioner represents a flight risk.[5]

2 The Court therefore will grant Petitioner's request for Preliminary Injunction insofar as it will 1) enjoin Respondents from continuing to detain Petitioner as they seek a third country that will accept him upon removal and 2) order his immediate release from immigration detention. Having determined to grant this component of relief, the Court need not consider Petitioner's alternative bases for seeking the same relief.

### B. Prohibiting Petitioner's Re-Arrest Without a Prior Hearing

The third form of relief Petitioner requests is an injunction prohibiting Respondents from again arresting Petitioner, "until he is afforded a hearing before a neutral decisionmaker, as required by the Due Process Clause of the Fifth Amendment, to determine whether circumstances have materially changed such that his reincarceration would be justified because there is clear and convincing evidence establishing that he is a danger to the community or a flight risk." (Doc. 2 at 2.) The Court finds Petitioner has failed to show a likelihood of success on the merits of his claims supporting this relief. His claim that re-arrest in the future would violate his Fifth Amendment Due Process right unless he receives a pre-detention hearing finding him a flight risk or a danger overreaches, and ignores that under *Zadvydas,* as well as according to INA provisions and their supporting regulations that Petitioner would have the Court enforce, an alien may be detained pending removal without a finding of flight risk or danger.

As an example, if at some point a third country responds that it will accept Petitioner upon removal from the United States, circumstances likely will have changed such that there would then exist a significant likelihood of removal in the reasonably foreseeable future. At that point, any Due Process claim based on *Zadvydas* that Petitioner now has would be called into question, so long as ICE complied with the procedural requirements within the INA and regulations. And detention might lie on that basis alone—the existence

---

[5] To the extent the Court's injunction against further detention may be considered a mandatory injunction—a proposition the Court finds doubtful, as the injunction merely restores the *status quo* before ICE revoked Petitioner's release—the Court also finds a risk of extreme or very serious damage to Petitioner exists absent the relief. *Hernandez*, 872 F.3d at 997.

of a significant likelihood of removal in the reasonably foreseeable future—even in the absence of flight risk or danger. For at least that reason, the Court will deny Petitioner's request that it enjoin Respondents from re-arresting him in the future without a hearing yielding the specific findings he has interposed as a prerequisite.

### C. Enjoining Respondents from "Taking Petitioner Outside the United States"

The Court interprets Petitioner's final requested form of injunctive relief as an order enjoining Respondents from removing him to another country. Unlike his other three requested forms of injunctive relief, all of which were in support of claims in his Petition that his detention was constitutionally and otherwise infirm (Petitioner's First through Fourth, Seventh and Eighth Causes of Action), this final form of requested relief must be justified by one of more of his Fifth, Sixth and Ninth Causes of Action. Those claims allege, respectively, that Petitioner's removal to a third country violates his Fifth Amendment procedural Due Process rights, his substantive Due Process rights, and the CAT, respectively. The Court, at this juncture, cannot conclude that Petitioner is likely to succeed on any of these three claims, however.

The Court returns to the matter of *D.V.D.*, which Respondents argued had changed the circumstances of Petitioner's case. The Court is unable to conclude whether the Supreme Court's order, which stayed the district court's class-wide injunctive relief against DHS, in fact changes Petitioner's circumstances, or how, if at all, it impacts the merits of Petitioner's claims in this matter. This is because the Supreme Court's Order neither discusses the merits of the claims in *D.V.D.* nor provides a basis for its decision to grant the stay. The order, in whole, reads as follows:

> The application for stay presented to Justice JACKSON and by her referred to the Court is granted. The April 18, 2025, preliminary injunction of the United States District Court for the District of Massachusetts, case No. 25–cv–10676, is stayed pending the disposition of the appeal in the United States Court of Appeals for the First Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought. Should

> certiorari be denied, this stay shall terminate automatically. In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of the Court.

*Dep't of Homeland Sec.* v. D.V.D., 145 S. Ct. 2153, 2153 (2025). From this order, the Court can glean no guidance that would assist it in evaluating Petitioner's likelihood of success on his three removal-based claims. A review of the proceedings below, however, leads the Court to conclude they likely are not sustainable.

The named plaintiffs in *D.V.D.*, like Petitioner here, all were individuals subject to final orders of removal, some of whom had received withholding of removal to a specific nation under the CAT. *D.V.D. v. U. S. Dep't. of Homeland Sec.*, 778 F.Supp. 3d 355, 368 (D. Mass. 2025). Each had been informed by ICE officials they were subject to imminent deportation, in some cases to third countries. *Id*. Each alleged they had valid reasons to fear removal to countries that that were not included in their removal orders, and sought to prevent DHS form removing them or any class member to a third country without notice and an opportunity to assert fear of persecution or torture. *Id*. at 370. The district court granted their motion to certify a nationwide non-opt-out class consisting of

> All individuals who have a final removal order issued in proceedings under Section 242, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id*. at 378.

The Court observes that Petitioner meets the criteria for the above class. Thus the Court's decision here does not turn on the Supreme Court's decision to stay the trial court's injunction in *D.V.D.* or what that decision means. Rather, it turns on the existence of the action itself, and Petitioner's membership in the class on behalf of whom it is brought. Petitioner's claims addressing the lawfulness of his removal to a third country are the precise subject matter of the allegations brought in *D.V.D.*, and the class in *D.V.D.* seeks

- 11 -

the same relief that Petitioner seeks here. in his Petition, Petitioner asks the Court in relevant part to

> Order that [he] cannot be removed to any third country without first being provided constitutionally compliant procedures, including:
>
> i. Written notice to [him] *and* counsel of the third country to which he may be removed, in a language [he] can understand, provided at least 21 days before any such removal;
> ii. A meaningful opportunity for [him] to raise fear of return for eligibility for protection under the Convention Against Torture, including a reasonable fear interview before a DHS officer;
> iii. If [he] demonstrates a reasonable fear during the interview, DHS must move to reopen his underlying removal proceedings so that he may apply for relief under the Convention Against Torture;
> iv. If it is found that [he] does not demonstrate a reasonable fear during the interview, a meaningful opportunity, and a minimum of 15 days, for [him] to seek to move to reopen his underlying removal proceedings to challenge potential third-country removal.

(Doc. 1 at 38.)  The relief Petitioner seeks and the claims he makes underlying it duplicate the *D.V.D.* class action's allegations and prayer for relief.

"[A] district Court may dismiss 'those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief.'" *Pride*, 719 F.3d at 1133 (quoting *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979)). The Court thus cannot find that Petitioner is likely to succeed on his claims challenging his removal to a third country as reflected in his Fifth, Sixth and Ninth Causes of Action. For that reason, the Court will deny Petitioner's request to enjoin Respondents from removing him from the United States without first providing him the above procedures.

The Court also harbors significant concerns that Petitioner's challenges to his removal to a third country without the process he seeks falls prey to the jurisdiction-stripping provisions of 8 U.S.C. § 1252. Having found as it does regarding the impact of

the *D.V.D.* class action, the Court will forego further addressing the effect of Section 1252 at this point. The parties may address the issue in their merits briefing of the habeas Petition.

### IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** granting in part and denying in part Petitioner's Motion for Preliminary Injunction (Doc. 2). The Court enjoins Respondents from continuing to detain Petitioner as they seek another country that will accept him on removal. Respondents shall immediately release Petitioner from immigration detention under the same conditions that were in place prior to his re-detention. The Court denies all other aspects of temporary injunctive relief sought by Petitioner in his Motion.

Dated this 19th day of September, 2025.

_____
Honorable John J. Tuchi
United States District Judge